In the Matter of ISIDOR AUERBACH, an Attorney, Respondent.

First Department, February 5, 1926.

**Attorney and client — disciplinary proceedings -— attorney disbarred for converting funds of clients.**

An attorney at law is disbarred for converting moneys given to him by a client to be used in a composition settlement between the client and its creditors and for converting money received from another client to be held in escrow during the pendency of dispossess proceedings, although a part of the sum so converted has been repaid.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

No appearance for the respondent.

CLARKE, P. J.   The respondent was admitted to practice as an attorney and counselor at law at the June, 1913, term of the Appellate Division, First Department, and has practiced as such attorney since his admission.

The petition alleges that the respondent has been guilty of misconduct as an attorney at law as follows:   On December 11, 1923, respondent, while acting as attorney for Franzos & Goldin, Inc., against whom a petition in bankruptcy had been filed in the United States District Court for the Southern District of New York, received from A. W. Franzos, president of the corporation, $10,000 to be applied toward a composition settlement effected between the bankrupt and its creditors.   The money had been advanced to Mr. Franzos by Louis A. Friedfeld and respondent gave Mr. Franzos a receipt as follows:

"NEW YORK, *December* 11, 1923.

" Received from Louis Friedfeld the sum of ten thousand ($10,000) Dollars to be applied toward the composition of Franzos & Goldin, Inc., bankrupt, with the option to said Louis Friedfeld to withdraw same at any time he sees fit.        " ISIDOR AUERBACH."

Respondent failed to apply any part of this money as agreed, except the sum of $2,500, which he turned over to the attorney for the trustee. He returned to Mr. Franzos the sum of $1,000 and has converted the balance of $6,500 to his own use. The respondent had no claim or lien on the moneys converted, his fees having previously been paid.

The second charge is that while the respondent was acting as attorney for the G. & M. Lunch Co., Inc., against whom dispossess proceedings had been instituted by its landlord, Krypliasont Realty Corporation, in the Municipal Court, Borough of The Bronx, Second District, he agreed to receive from his client the rent for the premises occupied by it as it accrued and to hold it in escrow during the pendency of this action. He further agreed with the attorney for the landlord to pay this money over to him provided the landlord prevailed in this action, or if the latter was unsuccessful to apply this money toward a settlement. Before October 17, 1924, the date of the trial of the action, he received from his client $499.98 representing the rent due for July, August and September, 1924, in accordance with the arrangement. On October 17, 1924, the action was tried and a verdict was returned in favor of the landlord for the full amount. On October 18, 1924, and November 8, 1924, respondent received from his client payment of $166.66 representing the rent for October and November, 1924, making a total of $833.30 received by him from his client to cover the rent due the landlord. Although demands were made upon him he failed to pay over any part of this money until after November 15, 1924, having meantime converted it to his own use. In order to delay the payment of this money so converted respondent made numerous false statements and in one instance gave a check on a bank in which he had no account, having closed it three weeks before. Shortly after November 15, 1924, he paid $400 and on December 4, 1924, the date of the hearing before the committee on grievances, and after he had received charges and a notice of hearing before the committee on grievances for this date, he paid $200, leaving $233.30 still unpaid at the time of the hearing. Respondent had no claim or lien on the money converted by him.

The learned official referee to whom the matter was referred for hearing reports, as to the first charge, that the respondent admitted on the witness stand that he received the amount claimed and that he gave the receipt set forth in the petition and finds, " The evidence offered by the petitioner as to the transaction is clear and convincing," and that the testimony on behalf of the respondent as to the first charge " is so improbable that I am compelled to disregard it. The testimony utterly fails to show that the respondent turned

App. Div. 159]        First Department, February, 1926.

over any money outside of the amount paid to the trustee in bankruptcy and to his client."

An examination of the testimony and the exhibits clearly establishes that the respondent received the $10,000 for the purposes indicated, that the composition was not carried out, and that attempts to collect from the respondent the money claimed to have been converted were fruitless. Mr. Grenthal, a member of the bar, testified that in the course of an interview with respondent he had made the following admission: " I said, ' Mr. Auerbach, you know why you are here; I want the money back.' He said: ' Well, I don't owe Mr. Friedfeld the entire $10,000, because I returned $1,000 and I turned over $2,500 to Louis H. Solomon, the attorney for the trustee, making in all $3,500.' I said: 'Accepting your own version of it, where is the $6,500? ' He hesitated, and then said: ' Well, I throw myself upon your mercy as one attorney to another. I admit I have done wrong; and what can I do? ' "

Respondent's bank account in which he deposited $7,475 of the money received for the purposes of the composition in the bankruptcy proceeding was received in evidence by the referee. It shows that the money was immediately drawn upon, mostly in small sums, and that by April thirtieth the entire sum had been withdrawn.

A careful examination of the testimony shows that he undoubtedly converted these trust funds and that his testimony contained many false and incredible statements.

In regard to the second charge the evidence clearly shows that the respondent having received $833.30 in all for the express purpose of having the same paid over to the landlord of his client used the same for his own purposes, made many unfilled promises to pay and gave false testimony as to having sent the money by mail. He also gave a check for $400 which was dishonored, having no account in the bank against which he drew the check. He subsequently paid over a part of the sum due but gave palpably false testimony as to the payment in cash to his client's wife which was positively denied by her. There is a balance still outstanding due and unpaid. The learned referee has reported that both charges contained in the petition have been sustained. After an examination of the record there is no doubt that the respondent was guilty of the conversion of trust funds. His own testimony is unbelievable. He is unfit to remain a member of an honorable profession. He should, therefore, be disbarred.

DOWLING, FINCH, McAVOY and MARTIN, JJ., concur.

Respondent disbarred. Settle order on notice.